(No. 13942.—Decree affirmed.)
FRANKLIN GRANT HUMPHREYS *et al.* Appellants, *vs.*
CHARLES A. HUMPHREYS *et al.* Appellees.

*Opinion filed October 22, 1921—Rehearing denied Dec. 8, 1921.*

1. DEEDS—*no particular act is necessary to constitute delivery.* While delivery is necessary to render a deed operative as a conveyance, no particular act or ceremony is necessary to constitute delivery, and it may be by acts without words or by words without acts, provided it is the intention of the grantor that the deed shall at once vest an estate in the grantee.

2. SAME—*deeds of voluntary settlement, although retained by grantor, may be effective to pass title.* The presumption of delivery of a deed of voluntary settlement is much stronger than in case of an ordinary deed of bargain and sale, and under certain circumstances such a deed may be effective to immediately pass title to the grantees although the deed is retained in the possession of the grantor until his death, particularly where the grantor has reserved a life estate.

3. SAME—*when a deed of voluntary settlement is presumed to take effect at once.* A deed of voluntary settlement made to a minor and placed on record by the grantor is presumed to have been intended to operate at once, particularly where the grantor reserves a life estate, and unless the presumption arising from such facts is overcome by proof the conveyance becomes immediately effective.

4. SAME—*what is not sufficient to overcome presumption of delivery of deed of voluntary settlement.* In a suit to set aside a deed on the ground that there was no delivery because the grantor retained possession of the deed until his death, the presumption of delivery arising from the facts that the deed was a voluntary settlement to a minor child, was recorded by the grantor and reserved to him a life estate, is not overcome by the testimony and the decrees in two other suits brought by the grantor in his lifetime to reform or set aside similar deeds to other children, in which suits he testified he had always kept possession of the deeds.

APPEAL from the Circuit Court of Henry county; the Hon. FRANK D. RAMSAY, Judge, presiding.

BARTLETT S. GRAY, and STURTZ & EWAN, for appellants.

JAMES H. ANDREWS, guardian *ad litem,* for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the Henry county circuit court dismissing a bill in chancery to set aside two certain deeds and for partition of the lands described in the bill.

The facts out of which this litigation arose are, that in 1894 Hiram Humphreys was the owner in fee of 340 acres of farm land in Henry county and three lots in the village of Annawan. He was then about sixty-seven years old, had a wife, Martha, and four children. Two of these were sons, Grant and Charles, and two were daughters, Jennie May· and one known in this record as Minnie, who is made a complainant as Mary E. Patterson Winslow. Humphreys concluded to carry out a plan he had determined upon, after conferences with all the members of his family, to make a division of his land among his children by deeds, and October 19, 1894, he executed three deeds, one to Grant, one to Charles and one to Mary E. Patterson, who is known as Minnie, each conveying to the respective grantees and the heirs of their bodies 80 acres of land, and to Charles, in addition, three lots in the village of Annawan, and were charged, among other conditions, with the payment by each of the grantees to their mother, Martha, if she survived her husband, of $125 per year. At the same time he also executed a deed to his daughter Jennie May Rose, (she being then the wife of a man named Rose,) and the heirs of her body, for 100 acres, charged with the payment by the grantee of $1000 to her sister Minnie and $1000 to her brother Charles, also with the payment of $125 per year to her mother if she survived her husband. He reserved to himself a life estate in all the land. The grantor caused the deeds to be recorded October 23, 1894. His wife died in 1911, and his daughter Jennie died in March, 1914, leaving no child or descendants of a child surviving her. After Jennie's death her

father filed a bill in the circuit court to set aside the deed
to her on the ground that it had never been delivered but
had always remained in the possession and control of the
grantor and no title ever passed to the grantee. A decree
was entered at the June term, 1915, setting the deed aside.
In August, 1915, Humphreys made a deed to his son
Charles for the same 100 acres of land described in the
deed made to his daughter Jennie and which he had caused
to be set aside. The deed was dated August 10, 1915, ac-
knowledged August 11, 1915, and was recorded Septem-
ber 13, 1915. It purports to convey the 100 acres of land
described to Charles for life, with remainder in fee simple
to eight of grantor's grandchildren named, three of whom
were children of Charles and five were children of Grant.

The bill in this case seeks to set aside the deed to
Charles for 80 acres and the lots in Annawan, made Octo-
ber 19, 1894, which is called in the briefs exhibit A, and
the deed made to Charles in August, 1915, which is referred
to as exhibit B. The complainants in the bill are Grant,
his adult son, Cecil, and the daughter Mary E. Patterson
Winslow, known as Minnie. The defendants to the bill
are Charles, his three children and the four minor children
of Grant. The bill alleges the deed made to Charles in
October, 1894, and hereafter called exhibit A, was invalid
and conveyed no title because it was never delivered to and
accepted by the grantee but remained in the possession and
under the control of the grantor as long as he lived and
was not intended to become effective and pass any title
until after his death. The grounds of invalidity alleged as
to exhibit B are, that when it was made, in August, 1915,
the grantor was about eighty-nine years old, weak in mind
and body, illiterate, and for some years had been living
with Charles, who transacted his father's business and oc-
cupied a fiduciary relation to him; that Charles dominated
and largely controlled his father, sometimes resorting to
coercive measures to control him; that the deed was the

result of undue influence and was not the voluntary act of Hiram Humphreys. The prayer of the bill is that both deeds referred to be set aside and the land partitioned. After answers and replications, the cause was referred to a master in chancery to take and report the testimony and his conclusions. He found and reported the deed made to Charles in October, 1894, (exhibit A,) was a valid and effective conveyance, but that the deed of August, 1915, (exhibit B,) was not valid; that the grantor was weak in mind and body and easily influenced by any of his children who happened to be nearest him; that at the time and for a year before the deed was made he made his home with Charles; that he was incapable of making a voluntary disposition of his property; that he was induced to execute the deed by Charles and its execution was not the free and voluntary act of the grantor. The chancellor sustained the master's report as to exhibit A but overruled it as to exhibit B, and entered a decree finding both were valid deeds and dismissing the bill. Complainants have prosecuted this appeal.

The evidence shows that for several years prior to Hiram Humphreys' death he ceased to reside on his farm and went to live with his children. For some years prior to 1906 he lived with his daughter Minnie in Chicago. In 1906 he went to live with his daughter Jennie in Moline and resided there until her death, in March, 1914, when he went to live with his son Charles at Annawan, with whom he lived until October, 1917, when he went back to live with his daughter Minnie, who then lived at Mineral, Illinois, and with whom he resided until his death, in January, 1918. His wife had died in March, 1911. The proof shows that he retained the four deeds executed to his children in 1894 in his possession until his death. The deeds never came into the possession of the grantees until after their father's death. There is the testimony by one witness that the deed to Charles made in 1894 and the deed

3 0—4

made in 1915 were seen by the witness in the possession of Charles while his father resided at Charles' house. During that time the deeds were kept in a box in the bank vault at Annawan. After he went to his daughter's house at Mineral the deeds were by his direction removed to his daughter's and were found there with his papers after his death.

The contention of appellants that exhibit B was invalid and void because of the mental condition of the grantor and the undue influence of the grantee is not sustained by proof. True, there is some testimony slightly tending to support that contention, but even if considered alone it is wholly insufficient, and when all the testimony is considered it falls far short of sustaining the master's finding that the deed was not the act of Hiram Humphreys. The whole case as to both deeds, exhibit A and exhibit B, depends on whether the title was intended to and did vest in the grantees before the death of the grantor. He advised and consulted with his children before he executed the deeds to them in 1894. Minnie and Grant both testified to this, and that they expressed their satisfaction at the proposed division of their father's land. After the deeds were executed they were caused to be recorded by the grantor but were retained in his possession until his death. Delivery is necessary to render a deed operative as a conveyance, but no particular act or ceremony is necessary to constitute delivery. It may be by acts without words or by words without acts. If it is the intention of the grantor that the deed shall at once vest an estate in the grantee it is a sufficient delivery. The presumption of delivery of a deed of voluntary settlement is much stronger than in case of an ordinary deed of bargain and sale. Such deeds may be effective to immediately pass title though retained in possession of the grantor until his death. Where a deed of voluntary settlement is made to a minor and placed on record by the grantor the presumption is it was intended

to operate at once, and the reservation by the grantor of a life estate strengthens that presumption. *Riegel* v. *Riegel,* 243 Ill. 626; *Hill* v. *Kreiger,* 250 id. 408; *Baker* v. *Hall,* 214 id. 364; *Valter* v. *Blavka,* 195 id. 610.

The record shows the existence of all the elements necessary to make a *prima facie* case of intention of the grantor that exhibit A should immediately vest in the grantee the estate conveyed. It was a voluntary settlement. The grantee was a minor. The grantor reserved a life estate to himself and caused the deed to be placed on record. Unless the presumption arising from these facts and circumstances is overcome by proof showing the deed was not intended to become immediately effective but that the grantor intended it to become operative only after his death, the conveyance must be held to have become immediately effective.

It is contended by appellants that the testimony of Grant and Minnie on the trial of this case, and the transcripts of the testimony of Hiram Humphreys in the case he prosecuted to set aside the deed to his daughter Jennie and in a case to correct the descriptions in the deeds to Grant and Minnie, show that the grantor did not intend the deed (exhibit A) to become operative or vest any estate in the grantee until the grantor's death. The substance and effect of the testimony of Grant and Minnie on this question as affecting exhibit A was that they heard the grantor say he intended to keep possession of the deeds and receive the income from the land as long as he lived. This utterly fails to show the intention of the grantor that the deed should not become operative until after his death. Some of the cases above cited specifically hold that retaining the possession of the deeds in a transaction of this character does not show an intention that the conveyances shall not become immediately effective. The grantor having reserved a life estate in the land was as much entitled to the custody of the deed as the grantee would have been.

It is further contended the decrees, files and transcripts
of the testimony of Hiram Humphreys in the two suits re-
ferred to above show that no title was intended to or did
pass when exhibit A was executed and recorded. In the
suit to correct the description in the deeds to Grant and·
Minnie the bill alleged the deed to Grant described the
land intended to be conveyed to Minnie and Minnie's deed
described the land intended to be conveyed to Grant; that
the mistake had just recently been discovered and Hum-
phreys requested the parties to correct the mistake by ex-
changing quit-claim deeds, but Minnie refused. The bill
prayed that the descriptions be corrected in accordance
with the grantor's intention, and alleged they had never
been delivered to the grantees by the grantor but had been
retained in his possession and under his control and that
he had retained possession of the land. There was a decree
by default, and upon the hearing of testimony before the
master, Humphreys testified that he had retained in his
possession and under his control the deeds and also posses-
sion of the land. The bill to set aside the deed to Jennie
alleged she had died leaving a husband but no child or de-
scendants of a child; that the deed had never been deliv-
ered but had been retained by and under the control of the
grantor. The transcript of his testimony on the hearing
of that case, which does not appear to have been contested,
shows he was asked by his counsel if·it was his intention
that the deed to his daughter Jennie should pass title in his
lifetime, and he said it was not. If it be conceded that testi-
mony and the decrees and files of those two cases were com-
petent,—which we do not determine,—it does not overcome
the *prima facie* case made by the proof of the intention
of the grantor to immediately vest title in the grantee by
exhibit A. It seems quite apparent that the two suits re-
ferred to were prosecuted and decided on the theory that
as there was no manual delivery of the deeds no title passed.
Those decrees are valid and binding decrees in those cases,

but they cannot control this case in view of the evidence and the law applicable to such cases. In addition to the other circumstances referred to as supporting the claim that title was intended to vest in the grantees in the deeds made in 1894, the evidence shows that some years prior to the grantor's death Grant took possession of the land conveyed to him and made improvements thereon. He testified he paid some rent, but how much is not stated. For some years prior to his father's death Charles lived in the house on the lots in Annawan described in exhibit A. In May, 1914, Humphreys procured insurance on the Annawan house and had the policies made payable to Charles, insuring the property against loss by fire, lightning and tornado. The agent who wrote the insurance testified that Humphreys told him to make the policies payable to his son Charles, as it was his property. In October, 1915, Humphreys procured fire, lightning and tornado insurance on a barn situated on the 100 acres described in exhibit B and had the policies made payable to himself and his son Charles. Humphreys paid the premium for the insurance in both cases.

We have read and considered the testimony and the argument of counsel as to the facts and circumstances attending the making, recording and custody of exhibit B, which was the deed for the 100 acres made in August, 1915, as to whether it was the intelligent, voluntary act of the grantor and became immediately operative. We are fully satisfied that the evidence supports the decree that exhibit B became immediately operative to vest in Charles a life estate, with remainder in fee to the eight grandchildren mentioned, subject to a life estate reserved by the grantor.

The decree is affirmed. *Decree affirmed.*