Arlena Armstrong, Administrator of the Estate of Felton Armstrong, Petitioner-Appellant, v. Susie Daniel and Dreis & Krump Credit Union, Respondents-Appellees.

Gen. No. 51,462.

First District, Third Division.

November 9, 1967.

Rehearing denied November 28, 1967.

Frederick J. Bertram, of Chicago, for appellant.

David L. Husman, John F. Laughlin, and Price, Noetzel, Schlager & Burgeson, of Chicago, for appellees.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

The trial court denied the petition of the administrator of the estate of Felton Armstrong for an order requiring the payment to her of funds in an account with Dreis & Krump Credit Union in the sum of $5,727.91. The court

found that the funds had been properly paid to the defendant Susie Daniel, sister of the deceased and the survivor of the joint tenancy created by the agreement entered into when the account was established. The facts follow.

On September 23, 1957, Felton Armstrong and his sister signed a card entitled, "Joint Stock Account Agreement," which reads as follows:

> "The undersigned hereby apply for the issuance of shares to them in joint tenancy with the right of survivorship in the Dreis & Krump Credit Union, and, in consideration of the approval of this application by the said credit union, do hereby agree each with the other(s) and with the said credit union, that all sums now paid on shares or hereafter paid thereon, and all dividends therefrom shall be owned by us jointly with the right of survivorship, and in the event of the death of any of us the said credit union shall be liable thereon only to the survivor(s) and while any of us is living payment to any one of us shall discharge any liability of said credit union.
>
> (s) Felton Armstrong
> (s) Susie Daniel."

Dated 9/23/57.

It is significant to note that this agreement is between Felton Armstrong and Susie Daniel as well as between them and the Dreis & Krump Credit Union.

Armstrong was an employee of Dreis and Krump Manufacturing Co. and on the same day that he and his sister signed the agreement hereinbefore set forth, he made an application for membership in the Dreis & Krump Credit Union (Credit Union). On the following day he deposited $5 with the Credit Union and thereafter made deposits from his salary.

On April 18, 1959, Armstrong married Arlena Armstrong and they lived together as husband and wife until his death on September 8, 1964. At the time of his death the account contained $3,727.91, and on September 23, 1964, $2,000 payable to the Credit Union from the Cuna Mutual Insurance Society as a death benefit "for the benefit of the person entitled, upon the death of the Member, to the account of the deceased credit union member," was credited to the account. On September 25, 1964, the Credit Union paid $5,727.91 to Susie Daniel pursuant to the Joint Stock Account Agreement.

Petitioner first contends that the Joint Stock Account Agreement did not establish a joint savings account with the Credit Union, in that the agreement in question did not comply with conditions specifically required by the Joint Rights and Obligations Act. She contends that this Act abolishes all survivorship rights with certain statutory exceptions and that the agreement signed by Armstrong and Susie Daniel did not meet the conditions specifically required by section 2, paragraph (c) of the Act. Ill Rev Stats, c 76, § 2(c) (1965).

The Act generally abolishes survivorship rights in tenancies of personal property, but makes a specific exception where there is a "will or other instrument in writing expressing an intention to create a joint tenancy in personal property with the right of survivorship. . . ." Ill Rev Stats, c 76, § 2 (1965). Following this exception, the section also contains four provisos, or special provisions, with respect to joint tenancies which were inserted in connection with the acquittance of banks and other depositories. Paragraph (a) provides for deposits in banks and trust companies, (b) for shares of stock, bonds and other evidences of indebtedness issued by corporations, (c) for shares of stock, bonds and other evidences of indebtedness in savings and loan associations and credit unions, and (d) for survivorship in the pro-

34

ceeds from jointly held real property taken through the exercise of the right of eminent domain. Ill Rev Stats, c 76, § 2 (1965).

Paragraph (c) supra, which petitioner contends must be complied with in order to create a right of survivorship in the account in question, provides that when there is an agreement permitting payment to persons holding shares of stock, bonds or other evidences of indebtedness in credit unions and when that agreement is signed by all the parties at the time the shares of stock, bonds or other evidences of indebtedness were issued, payment to any such person shall be a valid release of the credit union for the payment so made. Ill Rev Stats, c 76, § 2 (c) (1965). It is significant that this proviso pertains only to liability between the depositors and the credit union. It has nothing to do with agreements between persons who are parties to joint tenancies in the accounts. Our court has already decided that paragraph (a) of the same section, which is substantially the same as paragraph (c) and differs only in that it covers deposits in banks and trust companies, was inserted only for the purpose of limiting the acquittance of the bank's liability and has never required that persons taking with the right of survivorship should sign anything. Johnson v. Mueller, 346 Ill App 199, 104 NE2d 651. In that case the court held that the right of survivorship in funds represented by certificates of deposit was properly established even though there was no agreement signed by both parties as required by paragraph (a) of section 2. The court explicitly stated that the proviso need not be complied with when there was an instrument in writing. It concluded that the certificates of deposit themselves contained provisions for survivorship and as such were instruments in writing expressing an intention to create a joint tenancy with the right of survivorship.

■ In our case the Joint Stock Account Agreement is an instrument in writing which clearly expresses the intention to create a joint tenancy with the right of survivorship. Moreover the agreement is between Armstrong and Mrs. Daniel as well as between the parties and the Credit Union. This brings Armstrong's account in the Credit Union clearly within the exception set out in the first paragraph of section 2 of the Joint Rights and Obligations Act.

Petitioner's second contention is that there was no donative intent shown on the part of Felton Armstrong to establish a joint account in the Credit Union with Susie Daniel. She contends that even if there had been an intent to make a gift when the agreement was signed, the intent was conditional and that he intended Mrs. Daniel to take only if he remained unmarried. She supports this contention with Mrs. Daniel's testimony. Mrs. Daniel was asked, "You said he wanted to sign it over to you in case anything happened to him?" She responded, "Yes; because he wasn't married." She continued, "And he never did change it when he got married. He never did change it."

■ The court in Graves v. Graves, 42 Ill App2d 438, 192 NE2d 616, has had occasion to comment on what is necessary to show donative intent where donor and donee make an agreement in writing in order to create rights of survivorship in a savings account. It stated that compliance with the Joint Rights and Obligations Act dispenses with the necessity of applying common law principles governing the creation of joint tenancies, and that the subject matter of the gift is not really the funds on deposit in the account, but rather an interest in the account or power to deal with the funds on deposit. The court said (p 446):

"The written deposit agreements, however, tend to show a donative intent on the part of the original

owner of the funds, and are sufficient to establish ownership in the survivor or survivors by virtue of the contracts and by virtue of the statutes upon the death of one of the depositors, in the absence of evidence to the contrary. *Such deposit agreements are presumptive evidence of a donative intent* and are effective unless the donative intent is disproved by other evidence,—proof of the agreements made a prima facie case for the plaintiff here." (Emphasis added.)

■ Petitioner offers only Mrs. Daniel's own testimony that Armstrong entered into the agreement "because he wasn't married" to support her contention that the gift was conditional. This is only one statement taken out of the context of a great amount of other testimony which supported the contention that there was an unconditional gift. This evidence is far short of the clear and convincing proof necessary to rebut the presumption of donative intent. Frey v. Wubbena, 26 Ill2d 62, 185 NE2d 850.

■ Petitioner finally contends that the gift must fail because there was no manual delivery of a passbook to Mrs. Daniel. It is well established that this crude conception of manual delivery has been superseded by the view that delivery is a question of intention. Maciaszek v. Maciaszek, 21 Ill2d 542, 173 NE2d 476; Riegel v. Riegel, 243 Ill 626, 90 NE 1108; Humphreys v. Humphreys, 300 Ill 46, 132 NE 774. Our Supreme Court had occasion to comment on the necessity of delivery of the passbook in Illinois Trust & Savings Bank v. Van Vlack, 310 Ill 185, 141 NE 546. It held that the retention of exclusive possession and control of a passbook was not decisive of the question of intent or of the joint ownership of the deposit, and that the deposit of money by one person in the name of himself and another with that other's knowledge, payable to either or to the sur-

vivor, gave a joint interest to the other person at the time of the deposit without any further delivery and regardless of possession of the passbook. In the instant case the intention of Armstrong to create a joint tenancy in the account is clearly evidenced by the Joint Stock Account Agreement. There was little more that he could have done to manifest his intention to create the joint tenancy than this.

The trial court did not err in finding that the proceeds of the account were properly paid to Mrs. Daniel as the survivor of the joint tenancy created by the Joint Stock Account Agreement, and the judgment is accordingly affirmed.

Judgment affirmed.

SULLIVAN, P. J. and DEMPSEY, J., concur.