21 Ill.2d 542 (1961)
173 N.E.2d 476
HELEN MACIASZEK, Appellant,
v.
MARY MACIASZEK, Appellee.
No. 36177.
Supreme Court of Illinois.
Opinion filed March 29, 1961.
*543 WALTER F. KERRIGAN, of Chicago, for appellant.
RICHARD F. MOONE, of Chicago, (HARRY SHRIMAN, of counsel,) for appellee.
Reversed and remanded.
Mr. JUSTICE HOUSE delivered the opinion of the court:
This is an appeal from a decree of the superior court of Cook County dismissing plaintiff's complaint for partition of a two-family property, declaring two deeds void for lack of delivery and as an invalid attempted testamentary disposition, and decreeing title in the defendant, Mary Maciaszek, on her counterclaim. A freehold is involved.
*544 Mary acquired the title from her father and mother in 1947 and mortgaged it for $2000 to provide funds due the father under a separate maintenance decree in favor of the mother. Thereafter, the upstairs apartment was rented and Mary, the plaintiff and their mother continued to live in the basement apartment until the mother's death in 1958.
In April 1949, Mary went to a savings and loan office to see Richard Kowaleski a real-estate man known as Richie, who had done business for the family for many years. She was accompanied by her mother and Dorothy Kraft, a friend. Arrangements were made with him to draw deeds to place title in joint tenancy with her sister Helen. He promised to take care of it and notify her. On April 21, 1949, she executed a deed to a nominee who reconveyed the property to her and Helen as joint tenants. The deeds were filed for record in a few days and returned to Mary who has held them since.
Defendant's theory is that there was no delivery or acceptance, and that since she did not intend for the deed to take effect during her lifetime it was void as an invalid attempt to make a testamentary disposition.
Mary testified that she asked Richie "to have Helen's name put on the deed." In the ensuing conversation it developed that she and her mother wished to prevent another sister and a brother from ever obtaining any interest in the property. Mary's friend, Dorothy Kraft, testified that Mary told Richie that she would like to have "Helen's name on the house," and wanted to know how it could be done. Richie then said that she could do it by a trust, a will or joint tenancy, and that the latter would be cheapest. This was the only testimony concerning the execution of the deed. The record is silent as to who was present the day the deed was actually signed. It seems strange that Mary failed to call her adviser, Richie, as a witness. He was available since he testified on behalf of the brother who filed a counterclaim attacking Mary's deed. (The brother's *545 counterclaim was dismissed and he did not join in this appeal.)
This was a closely-knit family unit of a mother and two unmarried daughters, the youngest being Helen who was 42 years of age. The mother worked until 1948 at which time she became entitled to social security benefits. It was the understanding that she was to be given a home the rest of her life and she concededly divested herself of all other interest in the property. Both of the sisters worked, contributed to a family fund and maintained a joint bank account. Helen testified that her contribution was from $15 to $50 per week and the evidence indicates that her contributions and those of Mary were substantially equal. She further testified that food, furniture, dishes and remodeling were paid from the "kitty," while Mary testified that she collected the rent and paid taxes and maintenance costs. An arrangement was used whereby Mary accounted for the rental portion of the property in her income tax return and Helen took her mother as a dependent. There appeared to be perfect accord as long as the mother lived. It was shortly after the mother's death that Helen learned that the property had been put in joint tenancy. Thereafter, Helen thought she was mistreated and wanted to either buy or sell the property, and when she could not work out an arrangement with Mary she filed her suit for partition.
From a consideration of the whole record we conclude that this is a case of voluntary settlement by one sister upon another with whom she lived and who shared with her the burden of caring for the mother. Her statement that she wanted to prevent her other sister and brother from ever getting any interest in the property was entirely consistent with her expressed desire to "have her sister Helen on the deed," and at most shows only one motive for executing the deed. Her contention that she did not intend to vest any title in her sister during her lifetime cannot be sustained merely because her "law advisor" suggested either *546 a trust, will or joint tenancy. Apparently Richie did not tell her that a joint tenant had the right of partition, and her reaction had he done so is in the realm of pure speculation. We observe parenthetically that this case points up the undesirability of laymen attempting to practice law. The proof does not sustain defendant's position that she did not intend to vest any title in her sister until after her death.
It is ingrained in the law that there must be delivery of a deed to make it effective. The crude conception of a manual delivery has generally been superseded by the more enlightened view that whether an instrument has been delivered is a question of intention. (Tiffany, Law of Real Property, 3rd ed. sec. 1034.) Delivery may be by acts without words or by words without acts, so long as the intention of the grantor that the deed shall at once vest an estate in the grantee is manifested. (Riegel v. Riegel, 243 Ill. 626; Humphreys v. Humphreys, 300 Ill. 46; Phenneger v. Kendrick, 301 Ill. 163; Zilvitis v. Szczudlo, 409 Ill. 252.) "The intention of the grantor is the primary and controlling factor in determining whether there has been a delivery." McClugage v. Taylor, 352 Ill. 550, 557.
From the earliest days this court has customarily recognized the rule that the recording of a deed constitutes prima facie evidence of its delivery. (Hines v. Keighblingher, 14 Ill. 469; Warren v. Town of Jacksonville, 15 Ill. 236.) The execution and recording of a deed by a grantor shows prima facie an intention on his part that such a deed become legally operative. In most cases there would be no object in having the deed filed for record if it were not intended that it should operate to pass title. In those cases where delivery by the grantor is questioned, proof of nondelivery will overcome the presumption, provided the proof is clear and convincing. Campbell v. Campbell, 368 Ill. 202; Creighton v. Elgin, 395 Ill. 87.
Applying the foregoing principles to the facts, we are *547 of the opinion that the recording of the deed by the defendant was the last step to carry out her intention of placing the property in joint tenancy. As has been heretofore noted, the proof sustains the intention of presently vesting title, and there is no other satisfactory explanation offered for recording the deed. The law contemplates that a deed become operative according to its tenor upon execution and delivery, whether actual or symbolic, and its validity cannot depend upon some mental reservation or change of heart by the grantor. To hold otherwise would destroy the stability of titles.
It is asserted that since the plaintiff did not know of the deed until long after its execution and recording there was no acceptance. A presumption of acceptance prevails where the conveyance is beneficial to the grantee, whether or not the grantee knows of its execution. (Baker v. Hall, 214 Ill. 364; Healy v. Stevens, 347 Ill. 202; Fonda v. Miller, 411 Ill. 74.) The deed to the plaintiff was beneficial to her and consequently a presumption of acceptance prevails.
The decree of the superior court of Cook County is reversed and the cause remanded, with instructions to dismiss the counterclaim and enter a decree for partition as prayed in the complaint.
Reversed and remanded, with directions.