2 Ill. App.3d 591 (1971)
274 N.E.2d 915
WILLIAM R. KAUZLARICH, Plaintiff-Appellee,
v.
EMILY K. LANDRUM et al., Defendants-Appellants.
No. 70-78.
Illinois Appellate Court  Third District.
October 26, 1971.
John E. Cassidy, Sr., of Peoria, for appellant.
Arthur D. Young, Martin M. Love, and Charles Wihelm, all of Lewistown, John Baudino, of Farmington, and William R. Kauzlarich, of Colchester, for appellee.
Order affirmed.
*592 Mr. JUSTICE HUNT delivered the opinion of the court:
This is an appeal from an order establishing a constructive trust in a one-half share of an estate, vested by Will. The Plaintiff is an heir of the deceased and he or his heirs would inherit an additional interest upon the termination of the trust if established, at the death of the trust beneficiary. The testamentary legatee and devisee appeals.
Matilda Kauzlarich died, testate, a resident of Fulton County, Illinois, January 16, 1966. She left her surviving as her sole heirs, legatees and devisees, two daughters, Mary Kauzlarich, an incompetent patient at Peoria State Hospital, and Emily K. Landrum, a resident of the State of Virginia; and two sons, William Kauzlarich, Plaintiff, and Walter Kauzlarich, both residents of the State of Illinois. By her Last Will and Testament, dated August 24, 1965, and admitted to probate May 18, 1966, she made a $700.00 cash bequest to her son, William, and divided the remainder of her estate one-fourth to William, one-fourth to Walter, and one-half to Emily. No provision was made for Mary. In the event Emily predeceased Matilda, the one-half share was to be divided among the two sons and their children. Emily survived her mother and the contingent distribution is moot except for comparison with certain language in a letter from Emily to her brother, William, in December, 1965, which will be discussed hereinafter.
The complaint seeks the establishment of a trust in the one-half share of the estate left to Emily and asks for an accounting, access to the family home of the testatrix, and for other relief. Defendant, Walter Kauzlarich, answered the complaint denying the material allegations and filing a counter-claim for partition of the real estate. The Defendants Landrum answered denying the existence of any trust and also answered the counter-claim for partition. Martin Love and Charles Wilhelm were appointed Guardian ad Litem and attorney for Mary Kauzlarich, incompetent, and filed answer to each of the above pleadings. The trial court imposed a constructive trust upon one-half of Emily's one-half interest, denied the prayer for accounting without prejudice, and denied the other prayer for relief. The issue of partition raised in the counter-claim was apparently severed from the case as was a separate suit challenging the validity of the Will on the grounds of lack of testamentary capacity which was at one time consolidated with this case for trial.
Testatrix was an immigrant to the United States and never learned to read or write the English language. She was in her 80's at the time of the execution of her Will in 1965, and was in failing health. Her husband had predeceased her in 1962 at a time when Mary had been a patient at Peoria State Hospital and bills for her support and care had accrued. Her share of her father's estate and some other funds of hers were *593 apparently consumed in a reimbursement proceeding in probate. Matilda was upset about this. On several occasions she counselled at length with Walter about how to leave her money so that the State could not take any for Mary's keep. Emily was present during most of these conversations.
Walter testified to two visits at his mother's home in the summer of 1965. At this time Emily was also home on a visit. The problem of Matilda's estate planning and of Mary's needs were discussed off and on over a several hour period between Matilda, Walter and Emily on at least two different days. Matilda said she was going to change her Will and wanted Walter to act as executor. Walter asked that Emily be named first because Emily had always handled her mother's business affairs. At this time Matilda said she planned to leave Emily a one-half share to take care of Mary's needs; that she would not leave it directly to Mary because the State would claim it. The witness advised his mother to leave Mary's one-fourth share to Emily who had always looked after Mary and had used Matilda's and Emily's money for Mary's needs. Emily agreed she would always look after Mary as she had in the past. It was also discussed that upon Mary's death her one-fourth share would go to the remaining children and grandchildren. Walter said his mother did this because she trusted Emily.
Walter further testified that after his father died in 1962, Emily looked after their mother's business affairs, had a joint checking account with her, paid bills for her, gave her money, and looked after Mary's clothing and needs, acting as her general agent.
Paul Greenwell, a Canton, Illinois attorney, testified that he was called to the Kauzlarich home where he interviewed Matilda about her proposed Will. Both Matilda and Emily were present throughout most of the conversations. Matilda wanted a specific cash bequest to William and the remainder divided equally among her four children. She mentioned Mary's incompetency and her desire not to have the State get any of her share. Greenwell suggested the possibility of a one-fourth interest in trust for Mary's benefit and the use of a Canton bank as a corporate trustee. Matilda did not want a bank as trustee and did not want any sum specified in the Will as set aside for Mary. Greenwell then told her she could will Mary's share to one of the other children and Matilda said she had faith in Emily and she would want Emily to take care of it for Mary. Emily was non-committal throughout these conversations. Matilda gave no instructions to Emily about how to use Mary's share in the presence of this witness. The Will was prepared and executed as set forth above.
After the execution of the Will and on or about December 10, 1965, *594 Emily wrote a letter from her home in Virginia to her brother William in Illinois. He had been looking after his mother whose health was failing. Much of the two page letter concerned the care of Matilda. On the second page Emily attempted to set forth her understanding of some of her mother's estate planning. The letter is inaccurate and unintelligible in part. It states, in part:
"That Will is drawn up for everything to be divided among those living  you, Vladi, and the two to be indicated as one-half to be set up for Mary. At the death of one of us, that share goes to that person's children as you and Valdi. If I should go, I had to sign everything to your children and Valdi's. The same thing applies for Mary's invested or her share. By law, this must be carried out.
Merle in no way is involved in this, and I cannot leave him one cent.
This was Mom's intention and I followed suit."
While Emily was confused as to the distribution of her share if she predeceased her mother and the distribution thereof if she survived, it is apparent that she knew she would receive a one-half share which included her own one-fourth share and Mary's one-fourth share which she was to hold for Mary.
Emily testified in her on behalf. She did not adequately refute the testimony of her brother Walter and Attorney Greenwell. She could not explain the letter above or what she meant thereby. She disclaimed any knowledge of her mother's estate plan prior to her mother's death and the distribution of copies of the Will. Based primarily on the above testimony the trial court found that a fiduciary relationship existed between Emily and her sister Mary and her mother Matilda; that Emily had received a one-half share of the residuary estate under the Will, one-fourth being her own and one-fourth being Mary's; that Emily denied holding the one-fourth for Mary which resulted in a constructive fraud and unjust enrichment. The court declared a constructive trust in a one-fourth interest in the estate, being a one-half part of the one-half interest willed to Emily. The court allocated fees and costs and directed Mary's share be collected and managed by a corporate trustee to be selected. The decree further declared the remainder of the one-fourth interest as intestate property which would pass to the heirs of Matilda upon Mary's death.
 1, 2 The trial judge had the best opportunity to observe the witnesses and to weigh the credibility of their testimony. Based upon the record as above set forth, this Court concurs with the trial court in imposing the constructive trust upon one-half of the residual one-half interest received by Emily under her mother's Will. The evidence is clear and largely unrefuted that Emily enjoyed a fiduciary relationship with her *595 mother Matilda and her sister Mary. She had helped both with personal and financial affairs at a time when her mother was limited in her abilities to look after herself and her sister was incompetent. She had worked with Attorney Greenwell after her father's death in resolving the State's claim for reimbursement from Mary's fund and the contributions to be made to the state hospital by Matilda. She was present when her mother discussed with Walter and later with Greenwell her estate plan to avoid putting anything in Mary's name so the state would not get it. She knew that her mother had considered certain alternatives and had elected to trust Emily by putting Mary's share in Emily's name. She acknowledged this in a letter to her brother William. After her mother's death she denied any knowledge of such trust, in the pleadings and in her testimony, although the record is almost silent as to any demands for an admission of the trust relationship, denial thereof, or any nonperformance in the care of Mary.
 3 Where a fiduciary relationship exists and the violation thereof would result in a constructive fraud and unjust enrichment, the court will impose a constructive trust.
 4-6 Constructive trusts are divided into two general classes, one being where actual fraud is present and the other where the existence of the confidential relation and subsequent abuse thereof is present. The mere existence of a confidential relationship prohibits the dominant party from seeking any selfish benefit during the course of the relationship and affords a basis for fastening a constructive trust upon property so acquired. Where a confidential relation exists it is presumed that the transaction resulted from influence and superiority and the burden rests upon the grantee or devisee to show that it was fair, equitable and just. Kester v. Crilly, 405 Ill. 425; Wagner v. Clauson, 399 Ill. 403; Schueler v. Blomstrand, 394 Ill. 600. See also Scott on Trusts, Third Edition, 1967, Volume I, Section 55.1, Pages 419 et seq.
The facts of this case fall squarely within the framework of the law in the cases and authorities above cited.
The order of the trial court is affirmed.
Order affirmed.
ALLOY, P.J., and STOUDER, J., concur.