GIOVANA GUERRIERI, a/k/a GENNIE GUERRIERI, a/k/a JENNIE GUERRIERI, Plaintiff-Appellant, *v.* ESTHER GUERRIERI, Admr. of the Estate of Sisto Guerrieri, Deceased, *et al.*, Defendants-Appellees.

(No. 73-73;

Third District—September 24, 1973.

J. Paul Aplington, of La Salle, for appellant.

L. E. Ellison, of Sterling, for appellees.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Whiteside County denying the request of plaintiff in an action to set aside two deeds which were executed by plaintiff, Giovana Guerrieri and conveyed certain real estate to her deceased son, Sisto Guerrieri. The action was based upon a theory that a constructive trust arose by reason of the abuse of a confidential relationship between the deceased Sisto Guerrieri, the son, and Giovana Guerrieri, the mother, who is plaintiff in this action. The widow of Sisto Guerrieri, his children, and the administrator of his estate were named as defendants in the action. At the close of the evidence for plaintiff, a motion of defendants for judgment was allowed by the trial court. The fundamental issue which is presented on appeal in this court is whether the evidence presented by plaintiff was sufficient to prove the existence of the requisite confidential relationship between plaintiff and her son at the time the two deeds were executed, so as to require setting aside such deeds.

The premises conveyed by the two deeds are located in Rock Falls, Illinois, and are referred to generally as No. 609 Avenue A and 701 Avenue A. These properties had a value of $9,000 and $8,000 respectively.

Plaintiff Giovana Guerrieri, at all times pertinent to our consideration, has resided at 609 Avenue A, and the house at 701 Avenue A has been rented with the current monthly rental being $80. From the record it is noted that on February 12, 1966, a second son of plaintiff, Linto Guerrieri, died and shortly thereafter, Sisto moved to Rock Falls from Cherry, Illinois, for the purpose of assisting Linto's widow in the operation of a tavern which had been owned by Linto. Whether Sisto was married at that time and had a family does not appear from the record, but it is noted that Sisto had lived with the plaintiff for about three years after coming to Rock Falls.

On August 31, 1966, plaintiff, Giovana, executed and delivered the two deeds conveying the properties to Sisto. Thereafter plaintiff continued to live at 609 Avenue A without payment of rent, and also continued to collect the rentals from 701 Avenue A. Until the time of his death on January 12, 1971, Sisto paid the taxes, insurance and repairs on both properties. After his death the same practices continued. Plaintiff continued to live in 609 Avenue A rent free and collected the rentals on 701 Avenue A and the administrator of Sisto's estate, his widow, continued to pay the taxes, for insurance and for repairs on the property. On September 21, 1971, the complaint of plaintiff to set aside the two deeds was filed. The basic question before us, as noted, is whether under the evidence presented in this case the property conveyed to Sisto should be deemed to be held under a constructive trust and that the deeds be declared void.

■■ The law relating to constructive trusts of the character which we have under consideration in the cause before us has been firmly established by many cases in this state. *Klass v. Hallas*, 16 Ill.2d 161, 157 N.E.2d 261, and *Kester v. Crilly*, 405 Ill. 425, are typical of such cases. The indispensable requirement, relating to both substance and procedure, is the existence of a confidential relationship, and, a showing that such relationship exists in all instances where one reposes trust and confidence in another or thereby gains a resulting influence or superiority over the first. As stated, however, in *Kester v. Crilly*, 405 Ill. 425, at page 432:

> "The mere existence of a confidential relationship prohibits the dominant party from seeking any selfish benefit during the course of the relationship and affords a basis for fastening a constructive trust upon property so acquired. Where a confidential relation exists, the presumption obtains that the transaction complained of resulted from influence and superiority and the burden rests upon the grantee to show that it was fair, equitable and just and did not proceed from undue influence

It is noted, consequently, that where a confidential relationship does not exist as a matter of law, it must be proved by the party asserting it by

clear and convincing evidence before a basis is established for raising a constructive trust. (*Apple v. Apple*, 407 Ill. 464, 95 N.E.2d 334.) Therefore, considered from the standpoint of procedure required in proof of such cause, the party asserting a constructive trust must first prove the existence of a confidential relationship before the burden of proving the fairness of the transaction shifts to the party alleged to be dominant.

■■■ The mere relationship of parent and child does not create a confidential relationship as a matter of law. (*Bodin v. Mattingly*, 8 Ill.2d 487.) It may exist, however, if there is competent proof of the necessary trust and confidence of one in the other so as to endow one of them with superiority. (*Klass v. Hallas*, 16 Ill.2d 164.) Factors to be taken into consideration are disparity in age, health, mental condition, education and business experience, and the extent to which the allegedly servient party entrusts the handling of his business and financial affairs to the other and reposes faith and confidence in him. (*Kester v. Crilly*, 405 Ill. 425.) A conveyance from a parent to a child cannot be presumed to have resulted from fraud or undue influence from the fact of the relationship alone. *McCrillis v. Utterback*, 397 Ill. 550, 74 N.E.2d 682.

In the instant case, to sustain her burden of proving the existence of a confidential relationship, plaintiff introduced the testimony of two attorneys and of three persons familiar with plaintiff and her family. In substance, the extent of the testimony of the persons familiar with plaintiff and her family was that plaintiff was about 76 years old when the deeds were executed; that she was born in Italy; that she spoke broken English and that she carried on her correspondence in Italian. The same witnesses, however, stated that they had no difficulty in understanding plaintiff or in conversing with her. One witness testified that plaintiff was in good physical health, except for her legs; that it was difficult for her to walk; that she could walk around her home with the assistance of a cane and by bracing herself on furniture; that she seldom left her house and then only if accompanied by someone who could assist her in walking. The length of time that plaintiff had suffered from such disability does not appear in the record. In response to direct questions, two of the witnesses responded that they did not know the extent to which Sisto had assisted plaintiff in her business affairs.

The two attorneys who testified were Charles W. Helmig and his sister, June, who were practicing law in Bureau, Illinois, in the year 1966. Their offices were in the second story of a building and the only access thereto was a flight of stairs described as "quite steep". According to June's testimony, Sisto came to see her sometime during 1966 to have her draft a will for his mother. When June stated she would prefer to talk directly with the plaintiff, Sisto explained that his mother lived a consid-

erable distance away; that she had difficulty in getting around, and that he was prepared to brief the attorney as to the provisions which his mother desired. June accepted this explanation and made notes but informed Sisto that plaintiff would be required to come to the office to execute the will. Thereafter, either June or her brother drafted the will and on a subsequent date Sisto drove plaintiff to Bureau in his automobile. To save plaintiff the problem of climbing the office stairs, June took the will down to the car, and it was her testimony that plaintiff's first words were, "I sign, I sign." Before permitting execution, however, the attorney stated that she read the will to plaintiff and explained its terms and satisfied herself that plaintiff understood and desired the dispositions which were made in the will.

One of the attorneys also testified to an acquaintance with Sisto prior to the transaction involving the will; that on several occasions "around" 1966, both before and after the deceased brother Linto's death, conferences were had with Sisto about the development of some land near Sterling which was owned by his "family". The conferences were described as "an awful lot of talk, very little actual dealing with property", and that apparently Sisto's mother owned some of the property which was being discussed.

Charles W. Helmig testified that he was practicing law in Bureau with his sister in 1966; that he took the acknowledgment of the plaintiff on the two deeds involved in the present litigation; that he believed the deeds were executed at the same time as the will, or near thereto; and that he could remember little of the circumstances surrounding the execution of the deeds, although he recalled that he had to go down from his office to an automobile to take the acknowledgments. Sisto was described as being Mr. Helmig's friend, and, also, a friend of Helmig's sister. Helmig stated that he had been contacted by Sisto also about another matter in May of 1966. On this occasion, he stated that Sisto had several blank deed forms which the deceased brother Linto had signed prior to his death. Sisto requested that the deeds be filled in and the acknowledgments completed, so as to effect a conveyance of the properties the deceased brother Linto had owned at the time of his death. Attorney Helmig stated that he explained to Sisto that what he requested could not be done legally, and that Sisto was quite perplexed. When asked on cross-examination if Sisto had a purpose of cheating or defrauding anyone, Attorney Helmig replied: "No, I don't think the thought ever crossed his mind."

In describing his conversation with Sisto on the occasion just referred to, Helmig stated that he and Sisto discussed the ownership of real estate at great length; that Sisto said the land individually owned by himself,

brother Linto, and their mother, was more or less considered as being in a pool; that this was the way business was done in the family; that he was acting for his brother's estate, for his mother and himself; that he was worried about his sister-in-law and his niece; that he wanted to do what was best for them; and that he thought the best thing was to hold all the real estate in one name because he expected some commercial development in the area and believed a greater profit could be realized from a sale if there was but one title holder.

The trial court, after considering all of the evidence presented in the cause by plaintiff, specifically inquired if there was any supplementary evidence of any kind which plaintiff could present to establish the existence of a confidential relationship between the plaintiff and Sisto. There was some discussion about the fact that the mother had made a conveyance to Linto's widow of other property. The trial court declared to counsel that there was no testimony which indicated in any way that there was the required confidential relationship or fiduciary relationship connected with the deeds to Sisto, nor was there any suggestion of undue influence connected with the two deeds. The court then stated that there was insufficient evidence to establish a basis for setting aside the deeds which were given to her son by the plaintiff in this case. The court indicated that there might be some basis to establish that the property was in some sort of trust for the benefit of the plaintiff. (Although not stated expressly, the trial court apparently was referring to a possible reservation of a life use of the property with right to receive income therefrom by plaintiff.) The court specifically stated that if there was no additional evidence to show definite undue influence on the part of plaintiff by her son Sisto, there would be no basis for setting aside the deeds in the case. The court then granted the motion for judgment in favor of defendants, orally expressing the conclusion that this was without prejudice to establish some sort of beneficial relationship for plaintiff short of requiring that the deeds be declared void.

We do not feel that it would be proper, on the basis of the record before us, to set aside the determination of the trial court in this cause. The trial court found from the evidence that there was no unmistakable or convincing evidence to establish the existence of a confidential relationship between Sisto and plaintiff at the time the deeds were executed. (*Cf. Apple v. Apple*, 407 Ill. 464, 95 N.E.2d 334.) While the disparity in ages and the condition of health may have existed, there is no evidence which shows disparity in mental condition, education and business experience. So far as the record is concerned, the plaintiff may have possessed a business acumen greater than, or on a par with, her son.

■■  The trial court apparently found that the record did not show suf-

ficient proof to warrant the conclusion that plaintiff customarily entrusted the handling of her business and financial affairs to her son, Sisto. Considering plaintiff's physical handicap and Sisto's friendship with the attorneys, the court could have seen no great significance, measured in terms of reposing of trust and confidence, in the circumstance that it was Sisto who briefed the attorneys as to the provisions of plaintiff's will. This would be particularly so considering that plaintiff must be deemed to have known she would be required to execute the will and could at that time have examined its contents. On the record we do not believe that the finding of the trial court was contrary to the manifest weight of the evidence in the action which sought to have the deeds set aside as being void. We, therefore, conclude that we are not justified, in the state of the record, in setting aside the judgment of the Circuit Court of Whiteside County in this cause.

The judgment of the Circuit Court of Whiteside County is, therefore, affirmed.

Judgment affirmed.

STOUDER and SCOTT, JJ., concur.