RETA LOUISE EDWARDS, a/k/a Reta Louise Miller, Plaintiff-Appellee, *v.* GLEN MILLER, Defendant-Appellant.

Fifth District   No. 77-273

Opinion filed July 3, 1978.

William B. Ballard, Jr., of Anna, for appellant.

Clinton J. Thurston, of Thurston & O'Shea, of Cairo, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiff, Reta Louise Edwards, a/k/a Reta Louise Miller, brought a suit for the declaration of a constructive trust in her favor upon a certain piece of property deeded to defendant, Glen Miller (Olive Branch property). The trial court imposed a constructive trust, ordering the defendant to hold the property in trust for the benefit of himself and plaintiff as joint tenants. In reaching this disposition, the trial court found: (1) that a fiduciary relationship existed between the parties; (2) that the parties had owned the property which was traded for the Olive Branch property in joint tenancy; (3) that plaintiff was induced to sign the deed to the traded property by means of undue influence and misrepresentation on the part of defendant; (4) that there was no consideration for this bargain, or inadequate consideration if defendant's testimony were assumed to be true; and (5) that the defendant failed to show that the bargain was a fair and reasonable one, as is required of one in a fiduciary relationship. The defendant appeals.

The facts in this case can be summarized as follows. For a 17-year period commencing in October 1958, the plaintiff and defendant lived together in a relationship akin to husband and wife. Reta Edwards' three children resided with the couple also, one of whom was asserted by the plaintiff to be the son of defendant. During this period, plaintiff often brought up the subject of marriage. Defendant's usual response was that he would marry her when he got the time and money. The parties never married.

During the time that the parties lived together the plaintiff often worked outside their home. In fact, plaintiff stated that she was the sole income provider during several periods. In July 1969, a parcel of real property referred to as the Thebes property was acquired by the defendant. The deed to the property was a joint tenancy deed, naming Glen and Reta Louise Miller as the tenants. It is undisputed that the bulk of the land's $8500 purchase price, consisting of a downpayment and a final lump sum payment in 1971, was contributed by defendant. However, the account of the plaintiff's role in meeting monthly property payments between August 1969 and March 1971 and the overall picture of her relationship to the Thebes property were vastly different in the respective testimony of the parties.

Reta Edwards testified that at the time the Thebes property was purchased, Glen told her she would have to go to work in order to enable him to meet the payments. She did go to work, and in addition to donating her money to household expenses and bills she gave defendant cash to apply towards each of the monthly payments, which apparently was taken directly out of defendant's checking account by the bank during the aforementioned 20-month period. Her contribution generally was one-half the payment or $38.

Glen Miller testified that he had voluntarily put her name on the Thebes deed but that he did so because a bank employee believed they were married and he did not wish to embarrass her around the area by telling the employee that she was not his wife. He did not intend to make a gift to her of half the property. However, figuring that someday they would get married and that he might predecease the plaintiff, he had approved of the feature of the deed which would cause the house to be hers in the event of his death. He felt he owed her something if he died but nothing while he was alive. He flatly denied that any money which he received from the plaintiff was for meeting property payments. He characterized her financial support as being solely for the upkeep of her children.

The parties apparently had a falling out and Reta Edwards moved out of the house she shared with defendant around November 1, 1975. The defendant stated that he made his first attempt to sell the Thebes property approximately one month after Reta moved out. He immediately experienced some trouble with respect to the title since, as he phrased it, "[he] was dumb enough to put her name on it to start with."

When defendant subsequently discussed his proposed sale of the Thebes property with the plaintiff he was informed that she would not sign the deed. Thereafter, defendant negotiated with a Mr. and Mrs. Moore for an even-up trade of the Thebes property for their property in Olive Branch, the property subject to the instant constructive trust.

In May of 1976, plaintiff, Reta Edwards was working third shift at her place of employment, finishing time being 7 a.m. At 7:30 a.m. on May 5, she discovered the defendant at her new residence waiting for her return from work. Plaintiff had not had any sleep for over 24 hours at this point. The defendant made known his intention to transport her to the courthouse for execution of a transfer of properties. According to plaintiff, he told her before they left for the courthouse that her name would be on the new property. Regardless, both agree that he informed her while enroute to the courthouse that she would not be on the new deed. She did not like the arrangement.

The deeds were finished being drawn up shortly before midday. When the plaintiff saw that she, in fact, was not named on the new deed to the Olive Branch property, she left the room. The defendant followed her

into the hall where a conversation occurred, the contents of which are bitterly disputed.

At the time of this conversation, plaintiff was under the general impression that she might get back together with defendant whom she still loved. She testified that Glen told her that she would either sign "or else." She was afraid of him, having in mind his past displays of a violent nature including hitting her, threatening her life and damaging furniture. Her impression that they might resume their prior relationship was bolstered by his promise to have things fixed so that if anything happened to him, she would have complete ownership of the Olive Branch property. She finally agreed to sign the deed, partially because she was very tired and it seemed as if the only way to get home and into bed was to do what Glen wanted her to.

On the other hand, Glen Miller testified that he promised to give her "the furniture" in the event he ever sold his place of residence in exchange for her signing the deed. She agreed to this bargain and returned to the office and executed the deed to the Moore's. Defendant has never turned the furniture over to her since he has not sold his house.

Reta denied ever making such an agreement. She identified the furniture referred to as consisting of an ice box, a deep freeze, a bedroom suite which was "ready to fall down," an antique bed which had belonged to her grandmother and a living room suite.

The defendant presents the following issues on appeal: (1) whether the trial court erred in finding that a fiduciary relationship existed between the parties; (2) whether the trial court erred in finding for the plaintiff, Reta Edwards, even if a fiduciary relationship existed; and (3) whether the trial court erred in imposing a constructive trust of one-half of the full value of the property.

■■ ■ A constructive trust is a restitutionary remedy to restore to a plaintiff property of which he has been unjustly deprived and to take from the defendant property which, if retained, would unjustly enrich him. (*Ray v. Winter*, 39 Ill. App. 3d 567, 350 N.E.2d 331, *rev'd on other grounds*, 67 Ill. 2d 296, 367 N.E.2d 678; Restatement of Restitution §160, Comment d (1937).) Constructive trusts are divided into two general classes: one in which actual fraud is considered as equitable grounds for raising the trust, and the other, where there exists a fiduciary or confidential relationship and a subsequent abuse of such relationship. (*Ray v. Winter*, 67 Ill. 2d 296, 367 N.E.2d 678; *Wold v. Wold*, 43 Ill. App. 3d 773, 357 N.E.2d 627; *Whewell v. Cox*, 54 Ill. App. 3d 179, 369 N.E.2d 330.) The trial court imposed the trust in the present case on the basis of an abuse by defendant of a fiduciary or confidential relationship.

The first issue to be determined is whether a confidential relationship

existed between the parties prior to the instant exchange of properties which inured to the benefit of defendant.

■■ Normally, proof of a confidential or fiduciary relationship requires a showing that one person has reposed trust and confidence in another who thereby gains a resulting influence or superiority over the other. (*Ray v. Winter*, 67 Ill. 2d 296, 367 N.E.2d 678; *Bremer v. Bremer*, 411 Ill. 454, 104 N.E.2d 299.) Generally, this is accomplished by establishing facts showing an antecedent relationship which gives rise to trust and confidence reposed in another. (*Ray v. Winter*, 67 Ill. 2d 296, 367 N.E.2d 678.) Such a confidential relationship may be moral, social, domestic or even personal (*Lux v. Lelija*, 14 Ill. 2d 540, 152 N.E.2d 853; *Rapp v. Bowers*, 38 Ill. App. 3d 668, 348 N.E.2d 529); however, where the relationship does not exist as a matter of law (*e.g.*, attorney-client), it must be proved by clear and convincing evidence in order to establish a basis for raising a constructive trust (*Ray v. Winter*, 67 Ill. 2d 296, 367 N.E.2d 678; *Lux v. Lelija; Cunningham v. Cunningham*, 20 Ill. 2d 500, 170 N.E.2d 547). Relevant facts to be considered include the degree of kinship, as well as disparity in age and business experience, and the extent to which the allegedly servient party entrusts the handling of his or her business and financial affairs to the other. *Whewell v. Cox; McCartney v. McCartney*, 8 Ill. 2d 494, 134 N.E.2d 789; *Wold v. Wold.*

After examining the record, we find that the trial court correctly found that a confidential relationship existed between the parties, with defendant being the dominant party.

■■ First, we note that the parties maintained an extremely close relationship of a domestic and personal nature for a period of 17 years. It was indistinguishable from a husband-wife relationship save for the absence of a marriage certificate. During most of this time, plaintiff relied on defendant for the support and direction supplied by a head of a household. That such reliance was upon one with no legal obligation to provide for her only serves to emphasize her servient position with respect to the defendant.

Second, it is clear that plaintiff entrusted business and financial affairs which had substantial impact on her life to defendant's decision-making power. He apparently decided what properties to acquire and, more importantly, handled what money plaintiff made when she was working. As plaintiff testified, she only retained sufficient cash to provide gasoline for the car that she used to travel to her job. In addition, after acquiring the Thebes property, the defendant told her she would have to go to work so he could meet the property payments. Plaintiff did so, presumably without complaint.

Finally, in plaintiff's account of the events of the May 5, 1976, transfer,

which the trial court obviously found to be true, we have a graphic example of the defendant's influence over and superior position with respect to the plaintiff. The plaintiff had opposed the previous efforts by defendant to get her to sign with him in order to achieve a sale of the Thebes property; she also told him while they were travelling to the courthouse that she did not approve of the fact that the Olive Branch deed would not mention her; nevertheless, after a brief conversation defendant succeeded in persuading her to do that which she had resisted. The influences exerted would appear to be those inherent in most estranged romantic relationships, where one party wishes the couple to resume the former status.

Where a confidential relationship exists, the presumption obtains that the transaction complained of resulted from influence and superiority and the burden rests upon the grantee to show that it was fair, equitable and just and did not proceed from undue influence. (*Guerrieri v. Guerrieri*, 13 Ill. App. 3d 1043, 301 N.E.2d 603; *Kester v. Crilly*, 405 Ill. 425, 91 N.E.2d 419; *Kauzlarich v. Landrum*, 2 Ill. App. 3d 591, 274 N.E.2d 915.) In other words, there is a shifting burden in constructive trust cases. First, the party asserting a constructive trust must prove the existence of a confidential relationship; then, the burden of proving the fairness of the transaction shifts to the party alleged to be dominant. (*Guerrieri v. Guerrieri.*) The standard of proof for the defendant's rebuttal evidence in such situations is clear and convincing evidence. *Sawyer v. Creighton*, 403 Ill. 364, 86 N.E.2d 242; *Higgins v. Higgins*, 72 Ill. App. 2d 179, 219 N.E.2d 88.

Although the transaction assailed in constructive trust cases is usually one between the parties *directly*, this is not a prerequisite. (*E.g., Kauzlarich v. Landrum.*) Although the instant transaction involved the Moores, it is the apparent interests of the parties which were drastically altered as its result.

It is fundamental that this transaction could not have been unfair or inequitable to plaintiff if she did not have any interest in the property. The trial court found that she was a joint tenant in the Thebes property. We agree with that finding.

■■ It is well settled that instruments which purport to create joint tenancies presumably speak the whole truth and those who claim adversely thereto must, in order to prevail, prove by clear and convincing evidence that a gift was not intended. (*In re Estate of Rupp*, 4 Ill. App. 3d 648, 281 N.E.2d 717; *Schlieper v. Rust*, 46 Ill. App. 3d 319, 360 N.E.2d 1192.) The defendant's evidence did not meet the standard.

His testimony revealed that in putting the deed in both names, he was influenced by his desire to provide for ownership in plaintiff after his death. This is not the type of evidence which can be equated with a clear

rebuttal of the intent to make a gift. At most, defendant's evidence indicated that he desired to have unbridled control over the property during his lifetime. He apparently felt that he could create a joint tenancy which only conferred the interests that he approved of. This is not the law. Moreover, we feel that although the plaintiff was not defendant's legal wife, the evidence that she contributed towards its purchase strengthens the presumption of a gift of the joint tenancy interest. (*Cf. Johnson v. Johnson*, 11 Ill. App. 3d 681, 297 N.E.2d 285.) Consequently, plaintiff lost an undivided one-half interest in a parcel of real estate as a result of the questioned transaction.

■■  We find that the defendant did not meet his burden of proving the fairness of the exchange. His explanation for the plaintiff's change of heart and her signing of the deed was incredible. That a person would surrender a present interest in an unmortgaged parcel of real estate for a possible chance for possession of some used furniture seems highly unlikely. Moreover, the trial court did not, nor do we have to rely on the presumption of the transaction's resulting from his special influence in face of the abundant evidence of such in the account of the plaintiff.

Since the interest of which plaintiff was unjustly deprived was a full joint tenancy interest, it was only proper and equitable that a corresponding interest in the traded-for property be restored to her.

Affirmed.

G. J. MORAN and WINELAND, JJ., concur.