*In re* ESTATE OF CECELIA MARTINO, Deceased.—(MADELYN MARTINO, Adm'x of the Estate of Cecelia Martino, Petitioner-Appellee, *v.* JEROME LEVATINO *et al.*, Respondents—(JAMES LEVATINO, Respondent-Appellant).)

First District (1st Division)    No. 80-3267

Opinion filed August 31, 1981.—Rehearing denied September 28, 1981.

Mary Denise Cahill and Adrienne Levatino-Donoghue, both of Chicago, for appellant.

John A. Zaleski and Thomas Pendergast, both of Des Plaines, for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

This citation proceeding (Ill. Rev. Stat. 1979, ch. 110½, par. 16—1) was brought by Madelyn Martino (petitioner), administrator with the will annexed of the estate of Cecelia Martino (deceased), to recover $10,000 in United States Series "E" savings bonds issued in the names of the deceased and James Levatino (respondent). The trial court found these bonds were the property of the estate of the decedent. Respondent appeals.

On June 4, 1971, the deceased, a woman in her seventies, came to the office shared by respondent, a real estate and insurance broker, and his brother Jerome Levatino, an attorney. There, she executed her last will and testament, wherein she bequeathed her entire estate to petitioner. Petitioner was the widow of Donald, son of the decedent, who had died on May 30, 1971. The will designated respondent to serve as executor. The will was witnessed by respondent and Jerome Levatino.

On June 7, 1971, the deceased purchased $7000 in United States Series "E" savings bonds in her own name and also $10,000 in these bonds bearing her name and that of respondent as co-owners.

Cecelia Martino died on March 25, 1980. At the hearing on proof of the will, the trial court found respondent unqualified to act as executor of the estate by virtue of having been a witness to the will. The will was admitted to probate and petitioner was appointed administrator with the will annexed.

At the hearing on the citation, Jerome Levatino testified pursuant to section 60 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 60). He testified the deceased had been a client of his and a personal friend of his father. He had drafted the will at request of the deceased. He knew nothing of the savings bonds until after the death of the deceased. Jerome Levatino also stated he generally did not witness wills he had drafted, but the deceased insisted he do so.

Respondent was called by petitioner pursuant to section 60 (Ill. Rev. Stat. 1979, ch. 110, par. 60). He testified he never participated in any business transactions with the deceased and never represented her in any capacity. The deceased had been a neighbor as well as a client of his father. He had no knowledge of the savings bonds until after the death of the deceased. The bonds were never in his possession. The deceased never owed him money and he had no other claim against her estate.

Petitioner testified she aided the deceased during the years following the death of Donald, petitioner's husband. Petitioner drove the deceased to the Levatino offices on June 4, 1971, at the request of the deceased. Petitioner was present in the office while the will was being prepared.

Petitioner testified she found the savings bonds in the dresser drawer in the home of the deceased in late February or early March 1980. On cross-examination, petitioner stated the bonds were discovered while the deceased was still alive. Petitioner could not inquire about the bonds because the deceased was then unable to communicate. She had simultaneously discovered "E" bonds for $7000 in the name of the deceased as sole owner.

Respondent called petitioner as a witness pursuant to section 60 (Ill. Rev. Stat. 1979, ch. 110, par. 60). She testified immediately after the death of Donald Martino on May 30, 1971, the deceased closed out the bank

accounts and safety deposit boxes held in co-ownership with him and reopened them in co-ownership with petitioner. The will of June 4, 1971, was executed that same week. The bonds in question were also purchased that week at the same bank where the deceased kept her accounts and safety deposit boxes. This bank was within walking distance of the deceased's home. In June 1971, the deceased was able to walk to the bank and ride a bus without assistance.

Petitioner testified she was present in the Levatino office during the execution of the will, but did not overhear the transaction. The deceased always told petitioner that petitioner would inherit everything.

Respondent testified he never had any discussions with the deceased concerning any bonds or securities. He had no personal knowledge of the financial affairs of the deceased. The deceased had never contacted him for advice concerning investment opportunities.

Jerome Levatino testified he had known the deceased since 1950. He could not recall the exact number of legal matters he handled for the deceased other than two real estate transactions and the divorce of her son. The deceased had come to their office to seek advice from his father. She customarily gave them small gifts every Christmas.

Jerome Levatino again testified the deceased insisted that no one else be present in the office when her will was executed. Despite his advice, the deceased had insisted both he and respondent act as witnesses and respondent be named executor. He again stated he never spoke with the deceased after June 4, 1971, and had no knowledge of the bonds in issue until after her death.

The trial court concluded the evidence established a fiduciary relationship between respondent and the deceased. The trial court further found no evidence to overcome the resulting presumption of fraud and concluded the bonds were the property of the estate.

In this court, respondent contends the trial court erred in finding a fiduciary relationship existed between respondent and the deceased, and also contends the trial court improperly applied the law in concluding the bonds to be assets of the estate.

With respect to United States "E" bonds payable alternately to the deceased and the respondent, Illinois law clearly provides (Ill. Rev. Stat. 1979, ch. 76, par. 2(e)):

> "If any such non-transferable bond, debenture, note or other obligation of the United States of America be made payable to two persons, in the alternative, such bond or other obligation shall, upon the death of either person, if such bond or other obligation is then outstanding, become the property of and be payable to the survivor of them."

Our supreme court has found this provision to be in conformance

with Federal bond regulations. See *Frey v. Wubbena* (1962), 26 Ill. 2d 62, 76, 185 N.E.2d 850; see also *Levites v. Levites* (1960), 27 Ill. App. 2d 274, 278, 169 N.E.2d 574, *appeal denied* (1961), 20 Ill. 2d 627.

Despite this statutory provision, a constructive trust may be imposed upon a surviving co-owner under the proper circumstances. In *Desiderato v. Sullivan* (1980), 84 Ill. App. 3d 1117, 1121, 406 N.E.2d 116, this court stated:

> "Generally, a constructive trust will be established upon a showing of 'actual fraud' or the existence of 'a fiduciary or confidential relationship and a subsequent abuse of such relationship.' (*Edwards v. Miller* (1978), 61 Ill. App. 3d 1023, 1026, 378 N.E.2d 583.) Proof of a confidential or fiduciary relationship requires a showing that 'one person has reposed trust and confidence in another who thereby gains a resulting influence or superiority over the other.' (*Edwards*, 61 Ill. App. 3d 1023, 1027.) Factors to be considered in determining whether a fiduciary relationship exists include the degree of kinship, disparity of age, health and mental condition, and the extent to which the allegedly servient party entrusted the handling of his business and financial affairs to and reposed faith and confidence in the dominant party. [Citations.]
>
> It has repeatedly been held that where, as in the case at bar, a fiduciary relationship does not exist as a matter of law, 'the proof must be clear, convincing, and so strong, unequivocal, and unmistakable as to lead to but one conclusion.' *Kolze v. Fordtran* (1952), 412 Ill. 461, 468, 107 N.E.2d 686."

■■ The burden of proving a confidential relationship rests upon the party seeking to impose a constructive trust. See *Edwards*, 61 Ill. App. 3d 1023, 1028.

It is undisputed respondent James Levatino was not in a fiduciary relationship with the deceased as a matter of law. Thus, the dispositive issue is whether petitioner proved the existence of such a relationship by clear and convincing evidence and in a strong and unmistakable manner. The finding of the trial court on this issue may not be reversed by this court unless it is against the manifest weight of the evidence. *Desiderato*, 84 Ill. App. 3d 1117, 1123.

Our review of the record impels us to conclude the finding of a fiduciary or confidential relationship between respondent and the deceased was contrary to the manifest weight of the evidence. In our opinion, petitioner failed to establish such a relationship by the degree of clear and convincing evidence required by law.

First and foremost is the question of the business, financial and social relationship between respondent and the deceased. The record establishes that the Levatino family had both business and social contacts with the deceased and her family for at least 20 years. Respondent himself, however, had never handled any business transactions for the deceased. There is no indication that any transaction by any member of the Levatino family on behalf of the deceased resulted in establishment of any influence over her by the respondent. Rather, the evidence tends to establish the deceased had simply a friendly relationship with the respondent. The lawyer and client relationship between Jerome Levatino and the deceased has no legal bearing upon the legal and equitable relation between the deceased and James Levatino.

It appears the deceased sought to put her financial affairs in order following the death of her son (and petitioner's husband) on May 30, 1971. According to petitioner, the deceased closed out the bank accounts and deposit boxes which had been shared between her and her son and reopened them with petitioner as co-owner. The decedent went of her own accord to the office of James and Jerome Levatino to execute her will. Petitioner drove her to the office and was present while the will was executed.

We do not disagree with the trial court's opinion that the naming of respondent to serve as executor of her estate indicated the deceased placed trust and confidence in him. However, this in and of itself does not establish the requisite superiority the respondent must have had to establish a fiduciary relationship. There is simply no evidence that the deceased, either before or after the execution of her will, ever entrusted the handling of her business and financial affairs to respondent.

We find no factors involved in the purchase of the savings bonds to indicate existence of any fiduciary relation between respondent and the deceased. The bonds were purchased at the bank dealt with by the deceased. Petitioner herself testified at that time the deceased was physically capable of walking to this bank without assistance. We also find it significant that the deceased simultaneously purchased $7000 worth of savings bonds in her name alone. This tends to indicate she was indeed responsible and handled her own financial affairs at the time.

It is also important that there is no evidence the bonds in question were ever out of the possession of the deceased. All bonds purchased on June 7, 1971, were found in the deceased's dresser drawer almost 9 years later. Significantly, those bonds issued in the name of "Cecelia Martino or James Levatino" could have been redeemed or otherwise reissued by the deceased alone at any time during the 9 years after their purchase. Petitioner presented no evidence to contradict the testimony by respond-

ent and Jerome Levatino that they had no knowledge of the bonds during the lifetime of the deceased. Indeed, the petitioner herself, who was far closer to the everyday affairs of the deceased than any member of the Levatino family, claimed no knowledge of the bonds until shortly before the death of the deceased. We therefore conclude there is no evidence that at the time she purchased the bonds there was a fiduciary relationship between the deceased and the respondent.

Petitioner contends the fact that all matters regarding the decedent's will took place when only the deceased and the Levatinos were present supports the finding of a fiduciary relationship citing *In re Estate of Trampenau* (1980), 88 Ill. App. 3d 690, 695, 410 N.E.2d 918. We find this factor unconvincing for several reasons. First, the deceased went to the Levatino office on her own initiative. Second, petitioner was in fact present in the Levatino office during the execution of the will, having driven the deceased to the office herself. Finally, there is no dispute as to the terms of the will, which bequeathed the entire estate to petitioner. The purchase of the bonds occurred several days later. Although petitioner asserts it is still unclear exactly who purchased the bonds, we must again note it was the burden of petitioner to establish the existence of the confidential relationship. (*Edwards*, 61 Ill. App. 3d 1023, 1028.) Petitioner did not present the purchase application or any other evidence that the bonds were purchased by anyone other than the deceased. We feel the factors detailed above concerning the purchasing of additional bonds solely in the name of the deceased and the continued possession of all of the bonds by the deceased are sufficient evidence on this issue.

Petitioner also contends the purchase of the bonds shortly after the death of the deceased's son further supports the existence of a fiduciary relationship between respondent and the deceased, citing *Irwin v. Sample* (1904), 213 Ill. 160, 72 N.E. 687, and *Kester v. Crilly* (1950), 405 Ill. 425, 91 N.E.2d 419. These cases, however, are readily distinguished from the case at bar.

In *Irwin*, the facts established undue influence against John Irwin, who was incapacitated mentally and physically following the death of his wife after a 5-year illness. It was also established the defendants set upon Irwin immediately following the funeral of his wife and lied to him concerning their interest in her estate. 213 Ill. 160, 164-66.

Similarly, when the transactions sought to be set aside in *Kester* were executed, the grantor was a partially paralyzed invalid suffering from great emotional stress following the death of his wife. The grantor was so incapacitated by illness that he was under constant care and relied upon others to handle all of his affairs. 405 Ill. 425, 427-28.

In the instant case there is no evidence the deceased was so distraught over her son's death that she was incapacitated. Rather, she personally

initiated the transfer of her bank accounts and the drafting of the will. Unlike the grantor in *Kester*, the deceased was physically vigorous and able to walk to the bank and ride a bus into Chicago from her home in Niles without assistance in June 1971. Finally, there is no evidence the deceased was ever under the influence of respondent so as to have entrusted him with the handling of any of her business affairs.

We find other factors set forth in *Desiderato*, 84 Ill. App. 3d 1117, 1121, are also pertinent here. Although the respondent was approximately 20 years younger than the deceased in 1971, this is not dispositive without some evidence of a deficiency in the ability of the deceased to handle her own financial affairs. As stressed above, the record is totally deficient in that regard. This is demonstrated by the actions of the deceased concerning her financial affairs following her son's death. There is also no evidence of physical or mental incapacity of any kind at that time. We also note that the friendly relationship the deceased had with the Levatino family is insufficient to show any sort of dependence upon the respondent by the deceased.

■■ We therefore conclude the finding of the trial court that a fiduciary relationship was established between respondent and the deceased was against the manifest weight of the evidence. Thus, we need not address the contentions by the parties concerning the proof necessary to establish the fairness of the transaction. (See *Desiderato*, 84 Ill. App. 3d 1117, 1122.) This finding also obviates the need of consideration by us of the additional arguments raised in respondent's brief.

■■ Petitioner contends that even if there were no fiduciary relationship between the deceased and respondent, the transaction must fail as an incomplete gift. We disagree. The requisite donative intent must be presumed in the case at bar by virtue of the purchase of the bonds by the deceased in the names of herself and respondent. (See *Johnson v. La Grange State Bank* (1978), 73 Ill. 2d 342, 368, 383 N.E.2d 185, citing *Frey*, 26 Ill. 2d 62, 72.) Also, where there is donative intent, it has been held that delivery to one of the co-owners is delivery for the benefit of all. (See *Frey*, 26 Ill. 2d 62, 72.) This element is clearly established by virtue of the possession of the bonds by the deceased. A party seeking to rebut these presumptions must do so by clear and convincing evidence. (See *In re Estate of Gibbons* (1978), 65 Ill. App. 3d 314, 315, 382 N.E.2d 585.) As this was the same burden of proof upon the petitioner to establish the existence of a fiduciary relationship between the deceased and respondent, it necessarily follows that the proof presented was inadequate to rebut these additional presumptions.

For these reasons, the judgment appealed from is reversed and the case is remanded with directions for the entry of a proper order finding that respondent James Levatino is the sole owner of the United States

Series "E" bonds herein involved in the aggregate face amount of $10,000 payable to the decedent and James Levatino.

Judgment reversed; cause remanded with directions.

CAMPBELL, P. J., and O'CONNOR, J., concur.