BLENDA J. NORDLUND, Plaintiff-Appellant, *v.* EVELYN NORDLUND,
Defendant-Appellee.

First District (1st Division)   No. 82—1041

Opinion filed June 27, 1983.

Edward J. Fitzsimons and Richard L. Jones, both of Chicago, for appellant.

Harry P. Stinespring & Associates, of Chicago, for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Blenda Nordlund, sought the declaration of a constructive trust in her favor over certain assets she transferred to her son, who is now deceased, and her daughter-in-law, defendant Evelyn Nordlund. The trial court entered a judgment in defendant's favor at the close of plaintiff's case and plaintiff appeals.

Plaintiff raises the following issues: (1) whether plaintiff established the elements necessary for the creation of a constructive trust; (2) whether the burden of establishing donative intent shifted to the donee once plaintiff, the donor, challenged the validity of the gift; and (3) whether the court correctly refused to allow plaintiff to testify to a conversation between plaintiff and defendant.

The events complained of in this suit occurred in 1978 at which time plaintiff, Blenda Nordlund, was 85 years old. At the time of trial Blenda was 89 years old. Plaintiff's husband, Albert, had died in 1964. They had two children, Roy Nordlund and Blanche Nordlund Buell. Roy Nordlund was married to Evelyn, defendant in this suit, and they had several children.

Testimony at trial established that Blenda and Albert had operated a machine shop as a sole proprietorship for many years. Roy had worked in the shop since he was about age 16 and, after his father's death, he was the shop's sole employee. Prior to June 25, 1978, Blenda maintained the books and records of the business and performed other miscellaneous office tasks. Blenda paid Roy a salary of approximately $200 a week and paid herself $65 a week out of the business checking account.

On June 23, 1978, Blenda suffered a stroke and was hospitalized for several weeks. She then moved into Roy and Evelyn's home.

Plaintiff attempted to testify to a conversation she had with Roy shortly after returning from the hospital but the trial court struck the testimony on grounds of hearsay. Evelyn was allegedly present during this conversation though she denied it. The excluded testimony was:

"I told him that the doctor told me that I should not be alone anymore. I told Roy that and it would [be] up to you to take

over the job. And he said that he would have to take over the shop. And he didn't seem to say very much. He said—then, I said, 'Well, I got to be worried a little bit and what is going to happen to me?' So he said, 'Don't worry, Ma, I will take care of you.'"

Blenda further stated that nothing more was said on this topic.

Blenda testified that sometime in July, after moving into Roy's home, she asked Evelyn to look up the telephone number of an attorney, Barry Kroll. Kroll's father had been a personal attorney for Blenda's family and Kroll had taken over part of his father's practice.

On July 19, 1978, Blenda's grandson, Robert Nordlund, drove Blenda to Kroll's office to meet with Kroll. Kroll's father had prepared a will for Blenda dated in 1975. In this will Blenda bequeathed to Roy the machine shop business, the real estate it occupied, and a vacation cottage in Cary, Illinois. Blenda bequeathed to Blanche her residence at 2919 North Kolmar in Chicago, and a savings account.

At the conclusion of Blenda's conference with Kroll, Blenda executed deeds to the business real estate and the Cary property and signed a bill of sale for the business assets conveying these items as a gift to Roy and Evelyn in joint tenancy. A codicil to Blenda's will also was executed and witnessed. The codicil specifically referred to the current gift and stated that the bequest contained in the will was satisfied.

Blenda testified that she told Kroll that she wanted Roy to have the business' building, machinery, tools and inventory. She did not know that she transferred the Cary property or the business' $24,000 bank account to Roy and defendant and she did not sign any documents transferring the shop building to them. Blenda also testified that at that time she was unable to see well enough to read an ordinary document and could not hear well.

On October 22, 1978, Roy died of a heart attack. The business ceased operations. Blenda, who had been living with Roy and Evelyn, was readmitted to the hospital shortly after her son's death. When she was discharged she did not return to Evelyn's home. Blenda testified that she returned to the business only once after her stroke and that Roy and Evelyn continued to pay her $65 a week from the business until Roy's death.

Statements of Blenda's treating physician that were admitted at trial indicate that the physician noticed no deterioration of Blenda's eyesight, hearing or mental capabilities between January of 1978 and August 10, 1978, when he last treated Blenda. The doctor also stated that in his opinion Blenda possessed her mental capabilities on August

10, 1978.

Kroll testified that at plaintiff's request he prepared documents to accomplish a gift of certain properties. Kroll testified that he never deviated from any instructions given to him by Blenda. Kroll testified that Blenda told him that Roy was entitled to the properties because he had earned them. While Blenda was in his office, Kroll called Roy and asked him how he wanted to take ownership. Kroll explained the characteristics of ownership by joint tenancy to both Blenda and Roy although he did not recall if he specifically explained to Blenda what would occur if Roy predeceased her. Kroll explained to Blenda that once she made a gift to Roy it was his absolutely and he could do whatever he wanted with it. Kroll testified that he was acting as Blenda's attorney but he was also carrying out the wishes of her son as to how he would like to take title to the gift he was to receive and relaying his wishes to Blenda. Kroll stated that other than that he had not acted for Roy in any other fashion. Kroll also testified that after discussing the taxes and business implications of the transfer of the business, Blenda decided that it would be easiest if the transaction was backdated to July 1, rather than on July 19, when she signed the documents.

Plaintiff first contends that the entry of the judgment was improper because plaintiff had established that a confidential relationship existed between plaintiff and her son, Roy. Plaintiff argues that once such a confidential relationship exists, there is a presumption that any transaction between the parties was the result of undue influence and the burden shifts to the grantee to show that the transaction was fair and equitable and did not proceed from the superiority and influence of the dominant party. (*Kester v. Crilly* (1950), 405 Ill. 425, 432, 91 N.E.2d 419, 423.) Defendant contends that plaintiff failed to establish the existence of a confidential relationship. We agree.

■ The proof of a fiduciary relationship must be clear, convincing and strong. It must unequivocally and unmistakably lead to one conclusion, the existence of the confidential relationship. (*Perry v. Wyeth* (1962), 25 Ill. 2d 250, 253, 184 N.E.2d 861, 863.) The mere fact of blood relationship, such as parent and child, does not establish a fiduciary relationship. (*Perry.*) Nor is it sufficient to show merely that plaintiff could not see or hear well. (*Guerrieri v. Guerrieri* (1973), 13 Ill. App. 3d 1043, 301 N.E.2d 603.) The record is devoid of any evidence that Blenda entrusted the handling of her business and financial affairs to Roy or reposed faith and confidence in him sufficient to create a fiduciary relationship. Further, there is no evidence that plaintiff was mentally deficient at the time of these transfers.

■■■ Although the parties and the trial court applied the rule for a directed verdict stated in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, to this case, since this was not a jury trial, the *Pedrick* rule is inapplicable. (*City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 349 N.E.2d 399; *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43.) In a case tried without a jury, when defendant moves for judgment at the close of plaintiff's case, the trial court is to weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence. (Ill. Rev. Stat. 1979, ch. 110, par. 64(3), now codified as Ill. Rev. Stat. 1981, ch. 110, par. 2—1110.) "In weighing the evidence, the court had the responsibility to consider all the evidence, including any favorable to the defendant. The court was not to consider the evidence in the light most favorable to the plaintiff." (*City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 57-58, 349 N.E.2d 399, 408.) A reviewing court will not reverse the decision of the trial court to enter judgment for the defendant unless it is contrary to the manifest weight of the evidence. Under the facts of this case, the trial court's decision is supported by the manifest weight of the evidence.

■■ Secondly, plaintiff contends that the burden of proving donative intent of the *inter vivos* gift shifted to defendant once plaintiff has questioned the validity of the gift. Plaintiff's testimony, however, failed adequately to raise the issue of the validity of the gift. Evidence at trial tended to show that plaintiff went to her lawyer's office and executed a deed and codicil to her will conveying the subject property to her son as a gift. When granting defendant's motion for judgment, the trial court observed, "this woman changed her mind after she gave the property away." (See *Auer v. Walter* (1971), 132 Ill. App. 2d 150, 267 N.E.2d 4.) In *Frey v. Wubbena* (1962), 26 Ill. 2d 62, 70-71, 185 N.E.2d 850, 855, the court recognized that there is a presumption that in taking or placing of title by a parent in a child is a gift or advancement, and the burden is upon one questioning the gift to overcome the presumption by clear and convincing evidence. There is a further presumption of acceptance of a gift that is beneficial to the donee. (*Maciaszek v. Maciaszek* (1961), 21 Ill. 2d 542, 173 N.E.2d 476.) Plaintiff has also not contested the fact that following her illness, her son ran the business himself, and she had no part in its operation. Under the facts of this case the burden of establishing the gift did not shift to defendant. See *Kraft v. Kretchman* (1959), 17 Ill. 2d 71, 160 N.E.2d 806.

■■ Lastly, plaintiff contends that the trial court improperly excluded plaintiff's testimony to the conversation between herself and

Roy. Plaintiff contends that this conversation is not hearsay since it was offered only for the purpose of showing her state of mind and the existence of the confidential relationship. The trial court ruled that plaintiff's testimony as to what Roy said to her was inadmissible hearsay. An out-of-court declaration offered as proof of the matter asserted therein is hearsay and is inadmissible. (*Simon v. Plotkin* (1977), 50 Ill. App. 3d 603, 365 N.E.2d 1022.) The son's comments do not demonstrate the mother's state of mind on the issue whether she reposed faith and confidence in her son and, therefore, a state of mind exception to the hearsay rule is inapplicable. Further, Roy's statements are hearsay when offered to prove the existence of a confidential relationship. Plaintiff has not presented any precedent supporting the admissibility of this evidence under an exception to the hearsay rule. The trial court did not err in excluding the conversation between the plaintiff and the deceased.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY, P.J., and GOLDBERG, J., concur.